[Civ. No. 4360.  First Appellate District, Division Two.—December 20, 1922.]

## O. L. GUSCETTI, Administratrix, etc., Respondent, v. JOHN DUGAN et al., Appellants.

[1] DEEDS—ACTION TO SET ASIDE—RESCISSION—TENDER OF CONSIDERATION—PLEADING—EVIDENCE.—In an action to set aside a deed on the ground of the mental incapacity of the grantor, plaintiff's intestate, the failure of the plaintiff to plead and prove that he offered to return everything of value which his intestate received from defendants will not deprive him of the right of recovery, where the evidence shows that the only consideration received by the grantor consisted of a few meals furnished to him, the agreement for his support by defendants having been oral and therefore unenforceable and the cash payment made by them to him having been used in payment of the services of the notary in preparing the deed.

[2] ID.—NOTICE OF INTENTION TO RESCIND—PLEADING AND PROOF.—No specific form of notice of an intention to rescind is required; and, in an action to set aside a deed on the ground of mental incapacity of the grantor, the rights of the defendants are shown to be sufficiently satisfied where the complaint alleges, and the answer admits, that the defendants have refused, upon demand, to deliver possession of the property in controversy to plaintiff, and · that said defendants have also refused, upon demand, to account to the plaintiffs for the rents of said property.

[3] ID.—INCOMPETENCY OF GRANTOR—EVIDENCE.—While one is at liberty to dispose of one's property in an unusual and unexpected manner without the imputation of mental incompetency, in this action to set aside a deed on the ground of mental incompetency of the grantor, the circumstances surrounding the execution of the deed, when viewed in connection with the testimony of plaintiff's witnesses, some of whom had known the grantor for many years, as to his weakened and abnormal mental state, was sufficient to warrant the finding that the grantor was of unsound mind at the time he made the deed.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Cabaniss, Judge.  Affirmed.

The facts are stated in the opinion of the court.

---

1.  Whether a deed of real property executed by an incompetent not judicially declared such may be avoided in action at law, note, 19 **L. R. A. (N. S.)** 461.

John J. O'Toole for Appellants.

Louis Ferrari for Respondent.

LANGDON, P. J.—This appeal is by the defendants from a judgment declaring null and void a certain deed purporting to convey title to certain real property in San Francisco, California, from plaintiff's intestate to defendant John Dugan. Said judgment also directed the said defendant to convey to plaintiff, as administratrix, all his right, title, and interest in said real property and awarded to the plaintiff the rental value of the premises from the date of the deed until the surrender of possession.

In the early part of April, 1919, Louis A. Bassi, since deceased, was the owner and in possession of the real property in controversy. He was at that time a man between sixty and seventy years of age, whose closest living relatives were a sister and her daughter. The sister had been living in the northern part of the state for about two years. The property in controversy consisted of a lot of ground in San Francisco, California, upon which was situated a flat or two-family dwelling-place. Bassi was living in one room of this flat. The upper flat was rented and the lower one was to let. The defendant, John Dugan, and his wife lived a few blocks away from the Bassi property. Mrs. Dugan had never met Bassi prior to the first part of April, 1919, at which time, hearing that his flat was for rent, she went to see it. She found Bassi engaged in cleaning up the premises and discussed with him the renting of the flat. He asked her if she would allow him to keep a room in the flat and if she would furnish him board. He asked her to talk the matter over with her husband, stating that he would call at her home the next day for her decision. He called the next day and was told by Mrs. Dugan that the arrangement was satisfactory to Mr. Dugan. Mrs. Dugan asked the amount of rental of the flat and was told: "If you take care of me and leave me in the house, I will fix that up later." Bassi then commenced certain repairs and improvements in the flat in accordance with the requests of Mrs. Dugan. She cleaned up the room which he was occupying and placed in it some of her own furniture. Bassi called at her home for two or three weeks

for his breakfasts and sometimes for his suppers during the time the repair work was being done. He had been suffering from some stomach disease for some time and was restricted in his diet. Mrs. Dugan testified that about a week after her first conversation with Bassi he said to her: "I know I can always make my home with you and I will deed you the flats for taking care of me." Nothing was done about the matter, however, and on April 27, 1919, Mrs. Dugan and her husband moved into Bassi's flat. On May 1, 1919, Bassi went to the hospital and remained there until his death on May 26th. On May 12th, while in the hospital and just before submitting to a surgical operation, he executed a deed conveying the property in question to John Dugan. At the time of the execution and delivery of the deed, Dugan and a notary public whose services he had secured were present in the room with Bassi. Bassi signed the deed and asked Dugan for some money. Dugan handed him ten dollars, which was immediately handed to the notary in payment of his services in preparing the deed. It is conceded that no consideration, other than what appears from the foregoing recital of facts, passed from the defendants to deceased.

The plaintiff, as administratrix of the estate of Louis Bassi, deceased, brought this action to cancel and annul the deed to defendant John Dugan, alleging that "on the thirteenth day of May, 1919, and for several days prior thereto the said Louis A. Bassi was infirm in mind and body and was of unsound mind to such an extent that he was unable to understand the nature of an act in signing or executing any instrument; that on the thirteenth day of May, 1919, the defendant John Dugan and Jane Doe Dugan, well knowing the said Louis A. Bassi was of unsound mind, as aforesaid, procured an instrument in writing in the form of a deed conveying or purporting to convey to said John Dugan all the real property hereinabove described." The action was dismissed as to Mrs. Dugan, she not being a grantee in the deed.

The trial court found that "on the thirteenth day of May, 1919, and for several days prior thereto, the said Louis A. Bassi, sometimes known as Louis Bassi, was infirm in mind and body and was of unsound mind to such an extent that

he was unable to understand the nature of an act in signing or executing any instrument.''

[1] The first contention of appellant is that the plaintiff did not plead nor prove any rescission of the contract; that, as it was found that a cash consideration of ten dollars was paid by John Dugan, and that said John Dugan also promised, orally, to maintain and support Bassi for the remainder of his life, it was incumbent upon the plaintiff to restore everything of value which her intestate had received under the contract. Reliance is placed upon section 39 of the Civil Code, providing that a conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to rescission, and also upon section 1691 of the Civil Code, providing that a party rescinding a contract must do so promptly and restore to the other party everything of value which he has received from him under the contract, or must offer to restore the same, upon conditions that such party shall do likewise.

We think that under the peculiar facts in evidence, and as found by the court in this case, the plaintiff has done all that is required of her. The ten dollars which was handed to Bassi by Dugan was to pay the fee of the notary public in drawing the deed, and was so used. Bassi received no benefit from this. The breakfasts and occasional suppers which were furnished to him for two or three weeks before he went to the hospital were furnished at first under an indefinite agreement that Bassi would ''fix it up later,'' and that Mrs. Dugan would never be sorry for what she did for him. Apart from the fact that the oral promise to support Bassi for the remainder of his life, which the court has found was made by Dugan, was unenforceable because such a promise is required to be in writing, it does not appear from the findings just when such promise was made. Plainly, from the evidence, it had not been made at the time Mrs. Dugan started to provide Bassi with his breakfasts, so, in the beginning such meals could not have been furnished in execution of such promise. For it appears from the evidence that at first these meals were furnished under Bassi's vague promise to ''fix it later.'' If anything was furnished to Bassi in execution of Dugan's promise to maintain him for life, it could have been, at most, but a few meals. Mrs.

Dugan testified that the first suggestion of conveying the property in return for maintenance was made by Bassi about a week after she had met him, and Dugan's promise of maintenance must have been made some time later. Within a month from the date of the first meeting of Bassi and Mrs. Dugan, he was in the hospital and defendant admits that he paid none of Bassi's expenses at the hospital. Therefore, under any view of the evidence, Bassi received from the defendant, in execution of the promise to maintain him for life, merely meals for a few days which meals consisted of soft-boiled eggs and stewed fruit, according to Mrs. Dugan's testimony. The amount involved is so negligible that we think plaintiff's neglect to offer to return the value of these meals need not concern us here under the maxim: *De minimus non curat lex.*

[2] It is also contended by appellants that the plaintiff failed to prove that she had given notice to defendant of her intention to rescind. However, the complaint alleges that the defendants have refused, upon demand, to deliver possession of the property in controversy to plaintiff, and that said defendants have also refused, upon demand, to account to the plaintiff for the rents of said property. These allegations were not denied. No specific form of notice of an intention to rescind is required and we apprehend that the rights of the defendants were fully satisfied by any notice which would convey to them, within a reasonable time, the idea that the plaintiff wished to cancel the deed and recover the property. No contention is made that the plaintiff did not act promptly upon discovering the facts.

[3] The only other point raised by the appellants is based upon a contention that the evidence is insufficient to warrant the finding that Bassi was of unsound mind at the time he made the deed. We shall not discuss this matter at length. It is sufficient to say that the testimony was conflicting, but that the record does include the testimony of several witnesses which would warrant the finding of the trial court. Added to this there is the force of circumstances so unusual as to suggest, in themselves, a departure from the normal and natural course of human actions. It is true, as contended by appellants, that the circumstances surrounding the transaction are insufficient, alone, to justify a finding of mental unsoundness, and one is at liberty to dispose of one's prop-

erty in an unusual and unexpected manner without the imputation of mental incompetency. However, the circumstances of this case take on a special significance when viewed in connection with the testimony of plaintiff's witnesses, some of whom had known Bassi for many, many years, as to his weakened and abnormal mental state.

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 15, 1923.

All the Justices concurred, except Wilbur, C. J., who dissented.